## RAINWATER V. HARRIS.

1.  ADMINISTRATION:   *Payment of debt before grant of letters.*

The plaintiff's intestate at the time of his death was justly indebted to the
defendant in the sum of $300, on which interest had accrued.   His estate
consisted of personal property of the value of $900, to one-third of which
the plaintiff was entitled as his widow.   Before the grant of administration
she paid the defendant out of the assets of the estate the sum of $300,
which he accepted in full satisfaction of his claim.   She subsequently ob-
tained letters of administration on the estate and brought this action as
administratrix to recover the money paid to defendant.   The deceased
owed no other debt—there were no debts due to him and the plaintiff ad-
ministered on the estate solely for the purpose of recovering in her repre-
sentative capacity the sum she had paid to the defendant.   *Held:*  That
the plaintiff is not entitled to recover, as the payment she made to the
defendant discharged in the interest of the estate, a debt which she

Rainwater v. Harris.

would have been bound to pay in the regular course of administration, and the settlement thus made should not be needlessly disturbed.

2. EVIDENCE: *As to transactions with plaintiff's intestate.*

In an action brought by an administratrix to recover a sum of money which she paid to the defendant before administration in discharge of his claim against the estate of her intestate, he offered to prove by his own testimony that he loaned the deceased the money in controversy to pay upon certain land; that he took no note for the amount, but the deceased at the time of receiving it made an entry in his own private memoradum book; and that no part of the debt had been paid except as paid by the plaintiff. *Held:* That such testimony, relating to transactions between the defendant and the deceased, was properly excluded. Schedule to Const., sec. 2.

APPEAL from *Washington* Circuit Court.

J. M. PITTMAN, Judge.

*B. R. Davidson*, for appellant.

1.   If in contemplation of the parties it was not intended that the money should be repaid, the law will not imply a promise to repay.   Chitty on Contracts, p. 23; 3 Addison on Contracts, secs. 1408–9.

The action for money had, etc., is an equitable action in its nature and cannot be maintained where it is inequitable to make a party repay the money.   2 Greenl. Ev., sec. 117.

2.   The payment by a widow before letters of administration are granted to her, of a debt of her husband, in good faith, the estate being solvent, is binding.   The act of an executor *de son tort*, that must be performed in due course of administration by the rightful administrator should be upheld.   See Williams on Exrs., 1451; 60 Ala., 322; 2 Rob. (Va.,) 664; 10 B. Mon., 148; 40 Mo., 644; 77 N. C., 357; 1 Salk., 295; 10 Page, 549; 17 Mass., 379; 4 Gray, 514; Schouler Exrs., sec. 193.; 25 Ga., 537; 1 Plowd, 280; 16 Ala., 494–500; 58 Ala., 313.   When one acts for an estate and subsequently administers, the letters relate

back to the death of the intestate and make valid all acts prior to administration. 102 Mass., 353–4; 12 Allen (Mass.,) 603; 2 Hill, (N. Y.,) 225; 19 Mo., 196–200; 21 Ind., 264; 1 Law Rep. Eq. Cas., 90–100; 2 Hill Chan. (S. C.,) 22; 10 Allen (Mass.,) 174; 38 Ark., 631.

The administratrix was estopped by her own act and conduct. 18 B. Mon., 519; 3 Johns. Chy., 417; Bigelow on Estp., p. 503; 5 Porter, (Ala.,) 64; 23 Ala., 555; 10 Paige Chy., 549–558; 122 U. S., 253.

*J. D. Walker*, for appellee.

HUGHES, J.

The complaint in this action alleged that the defendant, Rainwater, was indebted to the plaintiff in the sum of three hundred dollars for money had and received of her. The answer contains three counts; first a general and second a special denial. The third count is as follows: ''That prior to the death of the said J. A. Harris, to-wit, in the year 188— this defendant loaned to him the sum of three hundred dollars in cash, and took no note or evidence of indebtedness therefor, but that the same was entered by the said Harris in his own private memorandum book; that the said J. A. Harris was thereafter taken sick and died intestate before securing or paying the same; that he died indebted to this defendant in the sum of three hundred dollars and the interest thereon; that at the time of his death he left the said M. J. Harris, his widow and Wm. Harris, his son, his sole heirs him surviving and left property not exceeding seven hundred and fifty dollars in value; that he was not indebted at said time except to this defendant, as he believes and alleges, and had no outstanding claims for collection, as defendant believes and alleges; that sometime after the death of the said Harris, this defendant called the attention of the said M. J.

Harris to the indebtedness of her said husband, deceased, to this defendant, and of his entry in his memorandum book of the same; that by agreement of the said M. J. Harris and this defendant she paid this defendant the sum of three hundred dollars in full satisfaction of the said claim, which was the only sum of money ever paid to defendant by the said plaintiff."

The defendant then sets out in the same plea that said M. J. Harris had sued him in her own right for said sum, as money loaned him, and that upon a verdict of a jury, judgment was rendered for him, and concludes his plea by saying, "this defendant says that the sole and only object had in administering upon the estate of her said husband was to try and compel him to pay the sum of money based on the transaction aforesaid with herself after the death of her said husband."

A demurrer was filed to the answer "because it did not state facts sufficient to constitute a defence to the action."

The court overruled the demurrer to the first paragraph of the defendant's answer, to which the plaintiff excepted, and sustained the demurrer to the third paragraph of same, to which defendant excepted. After hearing the evidence the court sitting as a jury found the facts, declared the law, and gave judgment for the plaintiff for three hundred and forty-six dollars and sixty-five cents. The defendant moved for a new trial, his motion was overruled and he excepted and appealed. The motion for new trial assigns four causes:

1st. The finding of the court is contrary to law.

2nd. The finding of the court is contrary to and not supported by the evidence.

3rd. The court erred in excluding evidence offered by the defendant.

Rainwater v. Harris.

4th. The court erred in sustaining the demurrer to the 3rd paragraph of defendant's answer,

The appellant's counsel abandons in his brief, all the causes or grounds alleged, save the 4th.

Did the third paragraph of defendant's answer contain a good defence to the action?

The demurrer admits the facts alleged in the plea, from which it appears that the said J. A. Harris, at the time of his death owed no debts save the one to defendant, which was paid by the widow before grant of administration to her; and that she had administered for the sole purpose of recovering in her capacity as administratrix, the three hundred dollars she had paid to the defendant. The trial court found that Mrs. Harris, believing her husband indebted to the defendant, had voluntarily paid him the three hundred dollars, but held that the same was unauthorized by law. But the payment having been made, ought the plaintiff now to be allowed to recover the sum paid to defendant? There are no creditors who can object to the settlement. It was not to the detriment of the estate, but in its interest, as no interest was paid upon the sum loaned by appellant to appellee's intestate. The widow was entitled to administration and to the care and custody of the property before administration. She was entitled by law to an interest of one-third in the estate, an amount that would have exceeded the sum she paid appellant—the estate consisting of about $900, personal property, as the evidence shows. There was but one heir, a son of the intestate, who may or may not have been of lawful age, as far as appears from the transcript in the case.

1. ADMINIS-TRATION: ·

Authorities are not wanting, which hold that, when an estate has been settled and the debts paid by those interested in it, without administration, the settlement will not be dis-

turbed, and that an administrator qualifying afterwards cannot recover the assets, where there is no necessity that he should be allowed to do so. In *Harris, admr., v. Seals and wife*, 29 Ga., 585, the court said: "In the case in which there are no debts, the regular administrator, if there is one, is bound to divide out the estate among the heirs or next of kin according to the statute of distributions. Therefore, if in that case, an executor *de son tort*, divide out the estate, in that way, the act will be good—the division will stand." "In a word, the act will amount to a valid administration of the estate in full." In *Taylor v. Phillips*, 30 Vt., 238, it is held that, "it is competent for all the heirs of a deceased person, if they are of age, to settle and pay the debts of the estate, and divide the property among themselves, without the intervention of an administrator, and neither the creditors or debtors of an estate have a right to complain."

In *Richardson v. The Estate of Merril et al.*, 32 Vt., 28, it is held that, "in settlement of an administrator's account he is entitled to be allowed for money paid by him, in liquidation of a claim, which could have been enforced against him either at law or in equity." Notes for one thousand dollars were returned by the administrator on his inventory of the intestate's estate, payable to the intestate. The widow claimed they were her property, and the administrator paid her $1000 and kept the notes. The notes were afterwards held to be the widow's. The probate court refused to allow the administrator credit for the thousand dollars and the judgment was reversed and the credit allowed. These cases serve to show that while it is irregular and unauthorized to settle estates, outside of a regular administration, yet that it is not every settlement, thus made, that will be interfered with, and that where a settlement is fair, without fraud, and in furtherance

Irregular settlement of estates.

of the purposes of a regular administration, and made by competent parties, it will not be repudiated merely on account of the irregularity. It is true, Judge Cooley, in *Gilkey v. Hamilton*, 22 Mich., 283, says that, "under our probate system, an administrator is a mere officer of the law, and though his title to the assets of the estate relates back to the death of the intestate, yet it is an official title which cannot be affected to the prejudice of the estate, by any acts of his prior to his appointment; nor will his title be affected by any estoppel that does not rest on equities against the estate."

If the doctrine of estoppel could apply in the case at bar, it could certainly rest upon an equity against the estate. This claim was for loaned money, for the use of which no interest was claimed or received; its payment could have been, and it was just and right that it should have been enforced against the estate, in the regular way, had not the widow of the deceased—being satisfied that it was just—discharged it, by the payment of the three hundred dollars to the appellant before grant of administration to her.

In *Priest, admr., v. Watkins*, 2 Hill, 225, a note belonging to the estate of the intestate was paid to his widow, who subsequently united with another in taking out letters of administration, and they then brought an action upon the note in their representative capacity: "Held that, notwithstanding the provisions of the revised statutes, as to executors *de son tort*, the letters related back to the time of the intestate's death, and, therefore, the payment to the widow was a bar to the action." This is the converse of the case at bar. Here the widow paid the debt of her deceased husband before administration, then administered and sued to recover the amount paid. Ought not the rule to work both ways?

In *Brearly v. Norris*, 23 Ark., 166, Chief Justice English said, in substance, that, though it is against the policy of the statute to allow a person, especially a stranger, to pay unauthenticated claims against an estate, and procure their allowance against the objection of the administrator, by the testimony of the original claimant, and might lead to gross frauds against an estate, yet when this was done by the widow of the deceased, there being no administrator, and there was reason to believe that she acted in good faith, and that the claims were just, no injustice could have been done the estate.

At common law the personalty of a testator vested in his executor from the death of the testator by virtue of the will, but in an administrator from the grant of administration. An executor, before probate, might, at common law, take possession and dispose of the personalty of his testator, and perform almost any act, pertaining to his office, except to bring or defend a suit. Under our statute, executors and administrators stand upon the same footing, and their powers before probate are limited to the decent burial of the deceased, the preservation of his estate, and the payment of necessary funeral expenses. Mansf. Dig., sec. 44; *Diamond v. Shell*, 15 Ark., 26. "But," says Judge Smith, delivering the opinion in *McDearmon v. Maxfield et al.*, 38 Ark., 636, "if he does intermeddle and afterwards qualifies, his letters relate back and legalize his previous tortious acts, making him accountable to the persons interested in the estate. And the liability to account involves a validity in his acts, which is a protection to those who have dealt with him," citing 3 Redfield Wills, ch. 1, sec. 2, pp. 13, 16; *Stagg v. Green*, 47 Mo., 500; *Alvord v. March*, 12 Allen, 603; *Hatch v. Proctor*, 102 Mass., 351; *Rattoon v. Over-*

*acker*, 8 Johns., 125; *Priest v. Watkins*, 2 Hill, 225; see also *Bell v. Welch*, 38 Ark., 147.

"The title to personal property of a decedent is in abeyance, until his executor qualifies, or an administrator is appointed, when it vests in him by relation from the time of his death." Only acts which come properly within the authority and scope of a rightful representative, when performed before appointment, and without probate sanction, will afford immunity from personal liability to the representative, under this doctrine of relation. Schouler Executors and Adm'rs, [2d ed.] 190-194. In *Brown v. Walter et al.*, 58 Ala., 310, it is held that "an *executor de son tort* cannot, by his wrongful act, acquire a benefit, but is protected in all acts, not for his own benefit, which the rightful representative may do, and that when one has received and used assets of an estate under circumstances constituting him an executor *de son tort*, he may show, when called to account in equity by the rightful representative, that there are no outstanding debts, and that he has applied the assets for the use and benefit of the distributees, as they must have been applied in due course of administration." See also Williams on Executors, vol. 1, 313.

The fair payment of money out of the assets of an intestate's estate, that is solvent, by one who afterwards becomes administrator, in discharge of *bona fide* indebtedness of the estate and which the administrator would have been bound to pay in due course of administration, should not be needlessly disturbed, where the parties to the transaction acted in good faith, prudently and honestly. Schouler's Exrs. and Admrs., secs. 193-194, and authorities cited.

*Payment of debt before grant of letters.*

The defendant at the trial offered to prove by his own testimony that he had loaned said James A. Harris three hun-

*2. EVIDENCE: As to transactions with plaintiff's intestate.*

dred dollars to pay upon the Carnahan land, on the 23d of November, 1883, that he had taken no note for the same, and that he had never been paid the same, or any part thereof, except as paid by the widow—the plaintiff; that at the time he loaned him the money, he, the said Harris, made an entry in his own private memorandum book; to which testimony plaintiff at the time objected, which objection was sustained by the court, and the said testimony was excluded, to which the defendant at the time excepted.

There was no error in excluding this testimony as to transactions between appellant and the deceased. *Bird v. Jones, Admr.*, 37 Ark., 195; *McRae, Admr., v. Holcomb*, 46 Ark., 306; *Park, Admr.. v. Lock, Admr.*, 48 Ark., 134; Schedule to Constitution of 1874, sec. 2.

There was error in sustaining the demurrer to the third paragraph of appellant's answer. Reversed and remanded.

Battle, J., dissented.